## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : |
| | : Chapter 7 |
| TENGION, INC., | : |
| | : Case No. 14-12829 (CSS) |
| Debtor. | : |
| | : **Hearing Date: May 6, 2015 at 10:30 a.m.** |
| | : **Obj. Deadline: April 29, 2015 at 4:00 p.m.** |

## CHAPTER 7 TRUSTEE'S MOTION FOR THE ENTRY OF AN ORDER, PURSUANT TO 11 U.S.C. §§ 105, 363, AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006, AND 9019, (I) APPROVING SETTLEMENT AGREEMENT, REJECTION OF LEASE, ASSUMPTION AND ASSIGNMENT OF SUBLEASE, AND TRANSFER OF CERTAIN ESTATE PROPERTY FREE AND CLEAR OF ALL ENCUMBRANCES AND (II) WAIVING 14-DAY STAY PROVIDED BY <u>FED. R. BANKR. P. 6004(h) AND 6006(d)</u>

Charles A. Stanziale, Jr., in his capacity as the duly appointed Chapter 7 Trustee (the "Trustee") for Tengion, Inc. (the "Debtor"), hereby moves (the "Motion") this Court for entry of an order, pursuant to sections 105(a), 363(b), (f), and (m), and 365(a) and (b) of title 11 of the United States Code (the "Bankruptcy Code") and rules 2002, 6004, 6006, and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) approving the Settlement Agreement (defined below) and the transactions contemplated therein between the Trustee, the Landlord, and the Subtenant (each defined below) and (ii) waiving the 14-day stay provided by Bankruptcy Rules 6004(h) and 6006(d). In support of this Motion, the Trustee respectfully represents as follows:

### I.    <u>JURISDICTION, VENUE, AND PREDICATES FOR RELIEF</u>

1.    The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has jurisdiction over the Debtor's bankruptcy case and this Motion under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The predicates for the requested relief are sections 105(a), 363(b)(1), (f), and (m), and 365(a) and (b) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9019.

## II.      RELEVANT BACKGROUND

### A.      General Case Background

3.      On December 29, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

4.      The day after the Petition Date, the Office of the United States Trustee for the District of Delaware appointed Charles A. Stanziale, Jr. as the interim trustee in the Debtor's bankruptcy case and thereafter, following the meeting of creditors, he became the permanent Trustee.

5.      On February 9, 2015, the Bankruptcy Court granted the Trustee's motion to retain McCarter & English, LLP as his counsel, *nunc pro tunc* to the Petition Date [Docket No. 25].

6.      Since his appointment, the Trustee has conducted an ongoing review of the Debtor's prior operations, assets and liabilities, books and records, and other matters necessary for him to administer his duties under the Bankruptcy Code.

7.      In addition, the Trustee and his representatives have engaged in various discussions with the Debtor's former Chief Financial Officer and Senior Vice President, A. Brian Davis (the "CFO"); a majority of the Debtor's secured lenders and other creditors; potential turn-key purchasers; liquidators; and other parties-in-interest.

8.      On March 6, 2015, the Bankruptcy Court entered an order approving the Trustee's sale of substantially all of the Debtor's assets (except for certain assets, rights, and property subject to this Motion and the related settlement agreement) to RegenMedTX, LLC (the "Turn-Key Buyer") [Docket No. 53].

2

**B.       The Pennsylvania Property and Pending Rejection Motion**

9.       Although headquartered in North Carolina, prior to the Petition Date, the Debtor also leased commercial space located at 2900 Potshop Lane, East Norriton, Pennsylvania 19403 (the "Property"), pursuant to that certain unexpired non-residential lease (the "Lease") with Norriton Business Campus (the "Landlord").

10.       Prior to the Petition Date, the Debtor entered into a sublease agreement (as amended, the "Sublease") with Corporate Interiors, Inc. (the "Subtenant") wherein the Debtor subleased out a portion of the Property for the Subtenant's use and possession.

11.       Shortly after the Trustee's appointment, the Trustee and his representatives engaged in numerous discussions with counsel for the Landlord and counsel for the Subtenant in connection with the Property, the Lease, and the Sublease.

12.       Based on the Debtor's pre-petition cessation of operations at the Property, its vacating of the Property (with the exception of certain personal property, as discussed below), the amount of monthly rent due under the Lease for the Property, and other related factors, the Trustee determined in his business judgment to reject the Lease.

13.       To that end, on January 9, 2015, the Trustee filed a motion to reject the Lease, retroactive to the Petition Date (the "Rejection Motion") [Docket No. 13].

14.       The Landlord and the Subtenant each filed limited objections to the Rejection Motion [Docket Nos. 19 and 20, respectively].

15.       Thereafter, the Trustee, the Landlord, and the Subtenant (collectively, the "Parties") have engaged in settlement discussions to reach a consensual resolution of the Rejection Motion and related issues arising from the Lease and the Sublease.  In light of these discussions, the Parties agreed to adjourn the hearing date for the Rejection Motion.

ME1 19791450v.3

C.    **Background on the Lease and the Sublease**

16.    On or about February 1, 2006, the Debtor entered into the Lease with the Landlord.  By its terms, the Lease will automatically terminate on February 29, 2016.  A copy of the Lease (which also includes a copy of the Sublease) is attached as **Exhibit A**.

17.    The Lease provides, among other things, that rent is payable in monthly installments, with each installment due on the first day of each month.  The current monthly installment for rent due under the Lease is approximately $90,000 per month (the "Minimum Rent").

18.    The Lease further provides that the Debtor is obligated to pay for all heat, water, gas, sewer, electricity, or other utilities or services rendered, used, or consumed relating to the Property (collectively, the "Utility Charges").

19.    In addition, the Lease provides that the Debtor shall pay the Landlord a late charge of 6.0% for any sum due to the Landlord that the Debtor fails to pay within five days after which such sum is due (the "Late Charge").

20.    As provided by the Lease, the Debtor obtained property and casualty insurance policies in connection with the Property (the "Insurance Policies").

21.    To secure certain of the Debtor's obligations under the Lease, the Debtor paid to the Landlord two deposits, which the Landlord is holding (and within its control) in a separate interest bearing money market escrow account in the following approximate amounts: (i) $991,122.32 (the "Security Deposit"), and (ii) $1,198,973.33 (the "Restoration Deposit," and together with the Security Deposit, the "Deposits").

22.    In addition to the Lease, on or about March 1, 2011, the Debtor, as a sublandlord, entered into the Sublease with the Subtenant for the Subtenant to possess and use a portion of the

4

Property.  A copy of the Sublease is included within Exhibit A.

23.    The Sublease is unexpired and ongoing on a month-to-month basis, with either the Debtor or the Subtenant authorized to terminate the Sublease by providing 120-days advance written notice of an intention to terminate.

24.    Among other provisions in the Sublease (such as utility obligations), the Subtenant is obligated to pay monthly installments of rent and other charges to the Debtor in the approximate amount of $22,565.72 (the "Subtenant Rent").

25.    The Debtor's former CFO has confirmed that the Subtenant issued a deposit to the Debtor in the amount of $19,907.39, which deposit was not placed in a segregated account by the Debtor.

D.    **Background on the "Transfer Items"**

26.    The nature of the Debtor's business required it to install at the Property certain infrastructure equipment and systems, such as boilers, air compressors, exhaust fans, chillers, a clean room, generators, and related equipment (collectively, the "Infrastructure Systems").[1]

27.    The Infrastructure Systems required regular oversight, maintenance, and support services.  The Debtor had, pre-petition, contracted with a third-party consulting firm ("IRC") to perform these services.

28.    Since the Petition Date, the Trustee has coordinated with IRC to ensure the continual and uninterrupted oversight, maintenance, and support services for the Infrastructure Systems, and has incurred the costs on behalf of the Estate in this regard (the "Service Charges") through and including January 31, 2015.

29.    Prior to the Petition Date, the Debtor transferred the majority of its machinery,

---

[1]    The Landlord has asserted an ownership interest in the Infrastructure Systems, on the basis that they constitute "fixtures" under Article 9 of the Uniform Commercial Code and applicable non-bankruptcy law.

equipment, and supplies used in business then located at the Property to another one of its facilities located in North Carolina (the "N.C. Facility"), which were later sold, via court order, to the Turn-Key Buyer.  *See*, *e.g.*, Debtor's Schedules of Assets and Liabilities (the "Schedules"), Schedule B29 [Docket Nos. 3 and 53].  However, certain office equipment, furnishings, and other personal property of negligible value remained at the Property on the Petition Date (collectively, the "Personal Property").

30.    According to the Schedules and the Debtor's CFO, the Personal Property was largely placed into service between 2005 and 2008 and was ascribed a net-book value of approximately $6,000.  *See id.*, Schedule B28(B).

31.    The Property also houses computer equipment and servers owned by the Debtor (collectively, the "Servers"), which perform, among other things, security and maintenance functions at the Property.  The Schedules ascribe the Servers with a net-book value of $0.00.  *See id.*, Schedule B28(A).

32.    Shortly after the Petition Date, on January 9, 2015, the Trustee coordinated with a nationally recognized liquidator (the "Liquidator")—along with a representative of the Landlord—to conduct a tour and inspection of the Property, compare the assets listed on the Debtor's Schedules to those located at the Property, and assist the Trustee in evaluating (a) the liquidation and/or going-concern value of the Infrastructure Systems, Personal Property, and Servers (collectively, the "Transfer Items"), (b) whether the Transfer Items could be moved and relocated and the cost for same, and (c) whether it would provide a benefit to the Estate in moving and relocating the Transfer Items.

33.    Among other feedback, the Liquidator advised that (i) the sale of the Personal Property would not likely yield a significant result or benefit to the Estate; (ii) the Infrastructure

Systems would be costly and consume much time to move; and (iii) other assets reflected on the Schedules as being located at the Property had been transferred pre-petition to the N.C. Property.

34.    The Liquidator advised, and the Trustee agreed, that the Personal Property in particular was of limited value, and that, overall, based on an objective cost-benefit analysis for the Estate and other considerations, the Transfer Items were of negligible value to the Estate.

**E.    The Trustee's Surrender of the Property**

35.    On or about January 30, 2015, the Trustee caused IRC to turnover to the Landlord all keys and access badges to the Property.  In addition, IRC conducted a full audit of all access badges to the Property; deactivated the access badges for the Debtor's former employees, officers, and agents; reformulated the access badges to be in the name of the Landlord or its representatives; and coordinated with the Landlord for the continuation of the oversight, maintenance, and support services for the Infrastructure Systems.

36.    Shortly thereafter, the Trustee confirmed that neither the Trustee, the Debtor, nor their respective agents had access to the Property.  Accordingly, the Trustee and the Landlord (subject to granting this Motion and the approval of the Settlement Agreement (defined below)) have determined that the Trustee surrendered the Property as of January 31, 2015 (the "Surrender Date").

**III.    THE SETTLEMENT AGREEMENT**

37.    The Trustee filed the Rejection Motion within seven business days of the Petition Date, seeking to reject the Lease retroactively to the Petition Date.  The Landlord filed a limited objection to the Rejection Motion, based largely on the Trustee's request to reject the Lease *nunc pro tunc* to the Petition Date, and noting that the Trustee had not made any Minimum Rent payments to the Landlord.  The Subtenant also filed a limited objection to the Rejection Motion,

7

arguing that granting the Rejection Motion would violate the Subtenant's entitlement to 120-days' notice of the Debtor's/Trustee's intent to terminate the Sublease and that its rights are protected under section 365(h) of the Bankruptcy Code.  *See* Docket Nos. 19 and 20.

38.     In an effort to amicably resolve the Rejection Motion and the issues relating to the Property, the Transfer Items remaining at the Property, the return of the Deposits, and the potential claims against the Estate relating to the rejection of the Lease and any significant administrative expense claims, among other issues, the Trustee has engaged in extensive settlement discussions with the Landlord and Subtenant.

39.     On or about March 27, 2015, the Parties reached an agreement to resolve these outstanding and future issues, and executed that certain Settlement Agreement and Mutual General Release (the "Settlement Agreement").  The Settlement Agreement is subject to the Bankruptcy Court's approval.  A copy of the executed Settlement Agreement is attached as **Exhibit B**.

40.     The terms of the proposed settlement are set forth in the Settlement Agreement and are summarized here as follows:

a.    The Landlord shall remit a portion of the Deposits in the form of a cash payment to the Trustee in the amount of $325,000 (the "Settlement Payment").

b.    The Landlord shall acquire full ownership of the remaining portion of the Deposits, which shall serve as full and final satisfaction of any and all damages and/or claims held by the Landlord against the Trustee, the Debtor, and the Estate—including, without limitation, (i) any and all administrative expense claims, secured or unsecured claims, or priority claims under sections 365, 502, 503, 507, or any other applicable provisions of the Bankruptcy Code or applicable law, (2) any and all claims related to unpaid Minimum Rent, Late Charge(s), and Utility Charges (except as otherwise provided for in the Settlement Agreement), and (3) other payments due to the Landlord under the Lease or arising from the rejection and termination of the Lease (collectively, the "Landlord Claims").

c.    The Estate shall be responsible for the Utility Charges incurred from the Petition Date through the Surrender Date (January 31, 2015).

8

d.  The Landlord and the Trustee agree that the Settlement Payment constitutes a carve-out of the Landlord's perfected interests to the Deposits and is being made solely for the benefit of the Estate, free and clear of any alleged liens, claims, or interests, including (without limitation) any creditor of the Estate that may allege a secured claim against the Estate.

e.  The Trustee shall (subject to the representations and warranties in the Settlement Agreement) transfer all of the Debtor's rights to, title to, and interest in the Transfer Items to the Landlord, free and clear of all liens, claims, interests, and encumbrances (the "Trustee Transfer").  The Trustee Transfer is on an "AS IS," "WHERE IS," and "WITH ALL FAULTS" basis.

f.  The Trustee has determined that, based on the information he has gathered through his review and investigation, and the Landlord's asserted ownership interest in the Infrastructure Systems, the value of Transfer Items is no greater than $6,118.93 (the "Transfer Price").

g.  The Trustee shall assume the Sublease and assign the Sublease to the Landlord. The Landlord and Subtenant acknowledge and approve the assignment of the Debtor's right, title, and interest in the Sublease to the Landlord, and the Subtenant has represented that it has not defaulted on any of its duties or obligations under the Sublease or, if so, such defaults have otherwise been cured by way of the Settlement Agreement.

h.  The Parties agree that the Subtenant (i) will pay to the Trustee all unpaid Subtenant Minimum Rent and other additional amounts due and owing prior to the Petition Date, and (ii) will pay to the Landlord all unpaid Subtenant Rent and other additional amounts due and owing after the Petition Date.

i.  The Landlord and the Trustee agree that the Lease will be deemed rejected as of the Surrender Date, and, upon the Bankruptcy Court's approval of the Settlement Agreement, the Rejection Motion will be deemed withdrawn.

j.  Upon the Bankruptcy Court's approval of the Settlement Agreement, the Parties will exchange mutual general releases.   Notwithstanding the releases, the Landlord is not prevented from seeking indemnification and/or contribution from the Estate relating to claims made against the Landlord as to the Property from February 1, 2006 through the Surrender Date; provided, however, that any such claims for indemnification and/or contribution shall be limited solely to the extent of proceeds from the Insurance Policies, and not against the Debtor, the Estate, or the Trustee.

41.    The remaining terms of the Settlement Agreement are incorporated herein as if set forth in full length.

9

ME1 19791450v.3

## IV.    <u>RELIEF REQUESTED AND BASIS THEREFOR</u>

42.    By this Motion, the Trustee requests the entry of an order, substantially in the form as submitted herewith (the "<u>Proposed Order</u>"), pursuant to sections 105(a), 363(b), (f), and (m), and 365(a) and (b) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9019, (i) approving the Settlement Agreement, including the Trustee Transfer and mutual releases, and (ii) waiving the 14-day stay provided by Bankruptcy Rules 6004(h) and 6006(d) as to the effectiveness of the Proposed Order.

43.    As outlined below, the Trustee has demonstrated a compelling and sound business justification for entering into the Settlement Agreement, including the Trustee Transfer, and that the Settlement Agreement is in the best interest of the Estate and other parties in interest, and the Proposed Order comports with the provisions of the Bankruptcy Code and the Bankruptcy Rules. *See* 11 U.S.C. § 105(a) (the Bankruptcy Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code).

## A.    <u>The Settlement Agreement Satisfies the Requirement of Bankruptcy Rule 9019</u>

44.    Bankruptcy Rule 9019 authorizes the Bankruptcy Court, on motion, and after notice and a hearing, "to approve a compromise or settlement."  FED. R. BANKR. P. 9019. "Settlements are favored, but the unique nature of the bankruptcy process means that judges must carefully examine settlements before approving them."  *In re Nutraquest, Inc.*, 434 F. 3d 639, 644 (3d Cir. 2006).

45.    The Bankruptcy Court must also determine whether the proposed settlement is fair and equitable and in the best interest of the bankruptcy estate.  *See*, *e.g.*, *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).  To reach this determination, the Bankruptcy Court must assess the value of the claims that are being

settled and balance them against the value of the estate of the approval of the settlement. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). The Bankruptcy Court, however, "is not supposed to have a 'mini-trial' on the merits, but should 'canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness.'" *In re Key3Media Grp., Inc.*, 336 B.R. 87, 93 (Bankr. D. Del. 2005) (citations omitted).

46.    The standard by which bankruptcy courts in the United States Court of Appeals for the Third Circuit evaluate the reasonableness of a proposed settlement and compromise is well established, consisting of the policy in favor of settlements and the following four factors (known as the *Martin* factors): "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Key3Media Grp., Inc.*, 336 B.R. at 93 (citing *Myers v. Martin (In re Martin)*, 91 F.3d at 393.

47.    Here, a consideration of the *Martin* factors compels the conclusion that the terms of the Settlement Agreement are fair, equitable, and in the best interests of the Estate and creditors. Indeed, the proposed settlement (a) represents a global resolution of the Rejection Motion, the Landlord Claims, the Transfer Items located at the Property, the Deposits, the Lease and the Sublease, and other issues in dispute; (b) avoids time-consuming and costly litigation relating to these contested issues; (c) avoids the time and expense to the Estate in removing, relocating, storing, and disposing of the Transfer Items; and (d) generates a material return for the Estate and eliminates the potential for additional claims against the Estate.

48.    <u>Probability of Success in Litigation</u>. The Trustee believes that there is a basis to reject the Lease as of the Petition Date, cap the Landlord Claims, and recover a significant

portion of the Deposits.  However, based on the provisions of the Lease, the nature of the

Property and the Infrastructure Systems, the ability to obtain retroactive relief, and the majority

view of the courts interpreting section 502(b)(6) of the Bankruptcy Code as it relates to damages

from a debtor's failure to perform maintenance, repair, or restoration obligations under a non-

residential lease, the Trustee believes that recovering a significant portion of the Deposits will be

difficult, time consuming, and costly—and the potential result is uncertain.

49.     Acknowledging the relative positions of the Trustee and the Landlord, and given

the stark economic reality faced by the Estate, the Trustee determined in an exercise of his

business judgment to reach a compromise with the Landlord for the recovery of the Settlement

Payment and other consideration as set forth in the Settlement Agreement.  The Trustee believes

that the proposed settlement represents substantial value to the Estate in light of the risks and

uncertainties associated with pursuing the Rejection Motion and recovering the Deposits vis-à-

vis the Landlord Claims.  Because the resolution of the contested issues through the proposed

settlement will save the Estate from incurring significant attorneys' fees and expenses in any

attendant litigation/contested matters and protect the Estate from the risk of an unfavorable

outcome, the first *Martin* factor warrants the approval of the Settlement Agreement.

50.     Difficulty in Collection.  The Trustee is not pursuing claims against the Landlord

or the Subtenant, so the second *Martin* factor is inapplicable and weighs neither in favor nor

against approval of the Settlement Agreement.

51.     Complexity, Expense, Inconvenience, and Delay of Litigation.  The proposed

settlement satisfies the third *Martin* factor.  Among other things, the Trustee's dispute with the

Landlord would be an expensive and time-consuming issue for the Estate to be engaged in, and,

as noted, the result is not certain.  Moreover, the time spent embroiled in a dispute with the

12

ME1 19791450v.3

Landlord will result in the Estate incurring potential administrative expense claims for the post-petition use of the Property and storage of the Transfer Items.  Indeed, the Settlement Agreement resolves the significant administrative expense claims that may be asserted by the Landlord. Further, although the Trustee retained possession of the Property through January 31, 2015, in seeking to finalize the asset sale to the Turn-Key Buyer, the Turn-Key Buyer chose not to have the Lease and Sublease assumed and assigned, and thus the Trustee sees no benefit to the Estate in retaining the Lease, the Sublease, and the Property.

52.    At this time, the Estate lacks sufficient resources to pursue and/or engage in a protracted dispute with the Landlord, to pay the Minimum Rent required under the Lease, and to pay additional Utility Charges for the Property, among other things.  The proposed settlement avoids these obstacles in favor of a prompt and efficient resolution of the dispute without the need to expend further Estate resources.

53.    With the approval of the proposed settlement, the Estate will (i) receive an immediate infusion of funds; (ii) be relieved of any further obligations for future Utility Charges, Minimum Rent payments, Late Charge(s), and other known or unknown carrying costs or administrative expense claims relating to the Property; and (iii) avoid the costs and energies associated with removing, storing, and disposing of the Transfer Items (as discussed below).

54.    Further, the proposed settlement resolves issues with the Subtenant, the delay imposed by the 120-day period that the Subtenant has to vacate the portion of the Property in its possession, and the Trustee's potential obligations and expenses as a sublandlord under the Sublease.  Accordingly, the third *Martin* factor militates in favor of approving the Settlement Agreement and the relief afforded by the Proposed Order.

ME1 19791450v.3

55.    <u>Paramount Interest of Creditors</u>.  Because the Settlement Agreement (a) provides for the global and immediate resolution of the Rejection Motion, the Deposits, the Property, the Transfer Items, issues relating to the Landlord Claims, and other contested issues under which the Trustee's potential result is uncertain, time consuming, and costly, and (b) generates substantial and tangible benefits to the Estate through the Settlement Payment, includes the waiver of the Landlord Claims, obviates the Trustee's obligation to make Minimum Rent payments in excess of $90,000 per month and other post-petition obligations under the Lease, the proposed settlement is, in the Trustee's reasoned judgment, fair, equitable, and in the best interests of the Estate and creditors.

56.    Not only is the Settlement Agreement the result of good-faith, arms'-length negotiations by the Parties, the proposed settlement also assists the Trustee in reversing the economic reality of the Estate and a lack of unencumbered assets and available funds.  It follows, then, that the terms of the Settlement Agreement far exceed the lowest range of reasonableness consistent with applicable law, and should therefore be approved by the Bankruptcy Court.

**B.**    **The Trustee Transfer Should Be Approved and the Proposed Order Entered**

57.    As part of the proposed settlement, the Trustee also seeks the Bankruptcy Court's approval of the Trustee Transfer, which pertains to the Trustee's authority to transfer the Estate's rights, title, and interests in the Transfer Items to the Landlord, free and clear of all liens, claims, interest, and encumbrances (collectively, the "<u>Encumbrances</u>") in exchange for, among other consideration, the Transfer Price, a waiver of the Landlord Claims, and the mutual general releases included in the Settlement Agreement.

58.    Section 363(b)(1) of the Bankruptcy Code provides: "The trustee, after notice and a hearing, may sell, use, or lease, other than in the ordinary course of business, property of the

estate." 11 U.S.C. § 363(b)(1).  Relatedly, section 105(a) of the Bankruptcy Code permits the Bankruptcy Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Further, Bankruptcy Rule 6004 allows for sales not in the ordinary court of business to be made by either private or public sale or public auction. FED. R. BANKR. P.  6004(f)(1).

59.    To approve the sale of property outside the ordinary course of business under section 363(b)(1) of the Bankruptcy Code, courts generally hold that the transactions should be approved when they are supported by the sound business judgment of the trustee.  *See*, *e.g.*, *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 145-47 (3d Cir. 1986) (implicitly adopting the articulated business justification and good faith tests of *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983)); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (concluding that the Third Circuit adopted a "sound business purpose" test in *Abbotts Dairies*); *and see Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate . . . courts require the debtor to show that a sound business purpose justifies such actions").

60.    Generally, courts have applied four factors in determining whether a sale of the debtor's assets should be approved: (a) whether a sound business reason exists for the proposed transaction; (b) whether fair and reasonable consideration is provided; (c) whether the proposed transaction was proposed and negotiated in good faith; and (d) whether adequate and reasonable notice is provided.  *See In re Abbotts Dairies of Pa., Inc.*, 788 F.2d at 145-57.

61.    This fundamental analysis, moreover, does not change if the proposed sale is private rather than public.  *See*, *e.g.*, *In re Ancor Exploration Co.*, 30 B.R. 802, 808 (Bankr. N.D.

Okla. 1983) ("[T]he bankruptcy court should have wide latitude in approving even a private sale of all or substantially all of the estate assets not in the ordinary course of business under § 363(b)(1)"); *In re WPRV-TV, Inc.*, 143 B.R. 315, 319 (D.P.R. 1991), *vacated on other grounds*, 165 B.R. 1 (D.P.R. 1991) (a bankruptcy court "has ample discretion to administer the estate, including authority to conduct public or private sales of estate property"); *accord In re Caynon P'ship*, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985) (section 363 of the Bankruptcy Code clearly indicates that the manner of the sale is within the discretion of the trustee).

62.    Here, the Trustee Transfer of the Transfer Items to the Landlord satisfies these requirements and should therefore be approved.

63.    <u>The Trustee Transfer Reflects a Sound Exercise of Business Judgment</u>.  There is sound business justification for the Trustee's decision to make the Trustee Transfer to the Landlord.  Regarding the Personal Property first, the Liquidator has confirmed, and the Trustee agrees, that this category includes mostly furniture, office equipment, and other *de minimis* property,[2] and that any other sale of same would not yield a significant result or benefit to the Estate.  Moreover, the Schedules indicate that majority of the Personal Property was placed into service between 2005 and 2008 and has a net-book value of approximately $6,000—that is, of negligible value to the Estate.  Relatedly, the time, expense, and resources necessary to disassemble, package, remove, store, market, and dispose of the Personal Property (all at a cost to the Estate) far exceed the value or resale price of the Personal Property, if any.  Thus, the Personal Property is burdensome and of inconsequential value and benefit to the Estate.  The same is true with the Servers, given their zero net-book value, their age, and the inherent fact that computer hardware and software quickly become obsolete.

---

[2]    Insofar as property was relocated by the Debtor pre-petition to the N.C. Facility, the Trustee has included such property in its asset sale recently approved by the Bankruptcy Court [Docket No. 53].

64.    Second, as to the Infrastructure Systems, the Liquidator confirmed that removing these items from the Property would require significant expense and consume much time to move (and may likely require the Trustee to alter or damage the Property in doing so).  The Estate would also incur the additional costs in relocating, storing, and maintaining the Infrastructure Systems.  At the same time, the Landlord has taken the position that the Infrastructure Systems are considered "fixtures" to the Property and, therefore, already owned by the Landlord—making the transfer of same to be of limited value to the Landlord and allocated to but a small portion of the Transfer Price.  The Trustee is also including the Infrastructure Systems in the Trustee Transfer to avoid a contested dispute with the Landlord as to the Infrastructure Systems.

65.    Third, including the Trustee Transfer in conjunction with the Settlement Agreement, instead of through an auction, is a sound business decision by the Trustee.  The Trustee submits that the Estate will benefit from the Trustee Transfer without the added costs and risks associated with a public auction for the Transfer Items, at which the Trustee is not guaranteed the commitment of the Landlord to engage in the Trustee Transfer at all, much less at the consideration being received in connection with the Settlement Agreement.

66.    Even more, given the nature of the Transfer Items, the Trustee would have to conduct any public auction at the Property itself, and thus incur costs and expenses (with priority claims to the Landlord) for holding the auction.  Finally, the Trustee believes that the Trustee Transfer under the terms of the Settlement Agreement is much more likely to generate value to the Estate and close in a manner more quickly than an public auction.  Therefore, the Trustee Transfer is a sound exercise of the Trustee's business judgment.

67.    <u>The Transfer Price is Fair and Reasonable</u>.    Given the age of the Personal Property and the Servers, their respective net book values, the intricacies and nature of the Infrastructure Systems, the opinions of the Liquidator and the Debtor's CFO, and the Trustee's own determinations—coupled by the expenses that the Estate will avoid in removing, relocating, storing, and disposing of the Transfer Items, plus the immediate infusion of funds into the Estate that may not be possible otherwise—the Trustee submits that the Transfer Price is not only fair and reasonable, but provides substantial benefit to the Estate and creditors.

68.    <u>The Landlord is a Good-Faith Purchaser</u>.    Section 363(m) of the Bankruptcy Code provides that the "reversal or modification on appeal of an authorization . . . of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal."  11 U.S.C. § 363(m).

69.    This provision of the Bankruptcy Code "affords finality to judgments by protecting good faith purchasers, the innocent third parties who rely on the finality of bankruptcy judgments in making their offers and bids."  *In re Chateaugay Corp.*, 1993 U.S. Dist. LEXIS 6130, *9 (S.D.N.Y. May 10, 1993) (internal quotation marks and citation omitted); *see also Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal").

70.    Although not defined in the Bankruptcy Code, a "good faith" purchaser is one who purchases "in good faith" and "for value."  *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d at

18

147.   To substantiate a lack of good faith, the contesting party must show fraud or collusion between the purchaser and the bankruptcy trustee.  *Id.*

71.    The Trustee has ensured that all negotiations with the Landlord were conducted at arms' length through counsel.  The Landlord's and the Trustee's interests are at odds from one another, yet the Settlement Agreement and the Trustee Transfer is the product of good-faith negotiations involving substantial time and energy by the Parties and resulting in a global settlement between all the Parties and waiver of significant claims against the Estate.  Moreover, the consideration for the terms and conditions of the Trustee Transfer are fair, reasonable, and not the product of fraud or collusion, were negotiated in good faith, and will generate value for the Estate.

72.    Accordingly, the Landlord is acquiring the Transfer Items in good faith and is entitled to the protections of section 363(m) of the Bankruptcy Code.

73.    <u>The Trustee is Providing Adequate Notice of the Motion</u>.  The Trustee has provided adequate notice of the Motion to all parties in interest as required by applicable law. *See* FED R. BANKR. P.  2002(c)(1) (notice must contain "the terms and conditions of any private sale and the time fixed for filing objections"); *see also In re Del. & Hudson Ry. Co.*, 124 B.R. at 180 (the disclosures necessary in such a sale need only include the terms of the sale and the reasons why such a sale is in the best interest of the estate and do not need to include the functional equivalent of a disclosure statement).

74.    <u>The Trustee Transfer Should Be Approved Free and Clear of All Encumbrances</u>. To facilitate the Trustee Transfer as contemplated and required by the Settlement Agreement, the Trustee requests the authority to effect the Trustee Transfer of the Transfer Items to the Landlord free and clear of any and all Encumbrances.

75.     Section 363(f) of the Bankruptcy Code provides that property may be sold "free and clear of any interest in such property of an entity other than the estate" if: (i) such sale is permitted under applicable non-bankruptcy law; (ii) the party asserting the lien, claim, or interest consents to such sale; (iii) the interest is a lien and the purchase price is greater than the aggregate amount of all liens on the property; (iv) the interest is subject to a *bona fide* dispute; or (v) the party asserting the lien, claim, or interest could be compelled, in a legal or equitable proceedings, to accept a money satisfaction for such interest. *See* 11 U.S.C. § 363(f). This provision of the Bankruptcy Code is drafted in the disjunctive, so satisfaction of any one of its five requirements are sufficient to permit a sale "free and clear" of liens, claims, interests, or encumbrances. *See Folger Adam Sec. Inc. v. De Matties/McGregor JV*, 209 F.3d 252, 257 (3d Cir. 2000) (discussing how section 363(f) authorizes the sale of a debtor's assets free and clear of all liens, claims, and interest if "any one of [the] five prescribed claims is met").

76.     Here, to the extent that any valid lienholder exists, section 363(f) of the Bankruptcy Code is satisfied in that the Trustee Transfer is permitted under applicable non-bankruptcy law, the Transfer Items are subject in part to the Landlord's interests by virtue of its possession and nature of the Transfer Items (*i.e.*, fixtures), the Landlord has consented to the Trustee Transfer, and/or the Trustee has received the requisite consent.

77.     Moreover, as to any valid lienholders that may exist, such lienholders will be adequately protected by having their liens, if any, in each instance against the Debtor or the Estate, attach to the net cash proceeds of the Transfer Price, after the Trustee's costs of the transfer, in the same order of priority, and with the same validity, force, and effect that such creditor had prior to the Trustee Transfer, subject to any claims and defenses that the Debtor and

20

the Estate may possess with respect thereto.   Accordingly, section 363(f) authorizes the Trustee

Transfer of the Transfer Items free and clear of the Encumbrances.

78.     Moreover, in the event that no objections to the relief sought in this Motion are

raised, such absence of an objection will be deemed consent within the meaning of section

363(f)(2) of the Bankruptcy Code.  *See Hargrave v. Twp. of Pemberton (In re Tabone, Inc.)*, 175

B.R. 855, 858 (Bankr. D. N.J. 1994) (by not objecting to the sale motion, the secured creditor

was deemed to consent under section 363(f)(2) of the Bankruptcy Code); *see also Pelican*

*Homestead & Sav. A'ssn v. Wooten (In re Gabel)*, 61 B.R. 661, 667 (Bankr. W.D. La. 1985)

(same).  Accordingly, the Trustee requests that the Trustee Transfer of the Transfer Items to the

Landlord be free and clear of all Encumbrances, with the Encumbrances, if any, attaching to the

Transfer Price.

**C.**     **Authorization to Assume and Assign the Sublease and Reject the Lease**

79.     As set forth in the summary of the Settlement Agreement, the proposed settlement

contemplates the assumption of the Sublease and assignment to the Landlord—which assignment

will enhance the value of the proposed settlement to the Estate by curtailing further

administrative liability to the Estate as sublandlord to the Subtenant and resolving the

Subtenant's objection to the Rejection Motion.

80.     Section 365(f) of the Bankruptcy Code provides, in pertinent part, that:

The trustee may assign an executory contract or unexpired lease of the debtor
only if–

(A)     the trustee assumes such contract or lease in accordance with the
provisions of this section; and

(B)     adequate assurance of future performance by the assignee of such contract
or lease is provided, whether or not there has been a default in such
contract or lease.

21

11 U.S.C. § 365(f)(2).

81.     Under section 365(a) of the Bankruptcy Code, a trustee "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  Section 365(b)(1) of the Bankruptcy Code, in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor, providing that:

> (b)(1)   If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> (A)     cures, or provides adequate assurance that the trustee will promptly cure, such default;
>
> (B)     compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C)     provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

82.     Although section 365 of the Bankruptcy Code does not set forth standards for courts to apply in determining whether to approve a trustee's decision to assume an executory contract, as with a proposed sale of estate property, courts have consistently applied a "business judgment" test when reviewing such a decision. *See, e.g.*, *Grp. of Inst. Investors v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 318 U.S. 523, 550 (1953); *Matter of Talco, Inc.*, 558 F.2d 1369, 1173 (10th Cir. 1977).  A debtor satisfies the "business judgment" test when it determines, in good faith, that assumption of an executory contract will benefit the estate and the unsecured creditors.  *In re FCX, Inc.*, 60 B.R. 405, 411 (Bankr. E.D. N.Y. 1986).

83.     Here, the assumption and assignment of the Sublease is a necessary part of the proposed settlement that the Trustee has struck with the Landlord and Subtenant, and, as stated

22

above, will benefit the Estate.  Indeed, the Subtenant is a party to the Settlement Agreement and has approved of the assumption and assignment of the Sublease.  Moreover, the Subtenant has represented, and the Trustee agrees, that there are no defaults under the Sublease for which a cure is required, with the exception of payment of the Subtenant Rent, which shall be cured through the Settlement Agreement.

84.    Accordingly, the assumption and assignment of the Sublease as part of the proposed settlement is within the Trustee's sound business judgment, appropriate under the circumstances, and should be approved by the Bankruptcy Court pursuant to section 365 of the Bankruptcy Code.

85.    Relatedly, and by the same standards, the Trustee is seeking approval to reject the Lease as of the Surrender Date.  Section 365 of the Bankruptcy Code "allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." *In re Rickel Home Centers, Inc.*, 299 F.3d 291, 298 (3d Cir. 2000) (internal citations omitted). Courts generally apply the "business judgment" standard and examine whether the trustee's decision to reject is a proper exercise of business judgment.  *See Nat'l Labor Relations Bd. v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test.").

86.    Here, unless the Lease is rejected, the Estate is incurring in excess of $90,000 per month in Minimum Rent payments, plus other costs and charges (which may potentially constitute an administrative expense claim).  These costs and the retention of the Lease are not beneficial to the Estate as the Debtor ceased operations at the Property before the Petition Date and has removed almost all the personal property from therein, with the exception of the Transfer

ME1 19791450v.3

Items.  Moreover, the Trustee has already surrendered the Property and no longer has access to the Property.  Finally, the proposed settlement resolves the Landlord's objection to the Rejection Motion and contains a resolution of the Landlord Claims that would otherwise be asserted against the Estate.

87.    Accordingly, the Trustee respectfully requests that the Bankruptcy Court approve his decision to reject the Lease as provided by the terms of the Settlement Agreement.

## V.    Waiver of Bankruptcy Rules 6004(h) and 6006(d)

88.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  FED. R. BANKR. P. 6004(h).  Similarly, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  FED. R. BANKR. P. 6006(d).

89.    In connection with the terms of the Settlement Agreement, to reduce additional and avoidable administrative expenses, and to bring finality to the Parties, the Trustee is seeking to effectuate the Trustee Transfer and assignment of the Sublease as soon as possible, and, accordingly, respectfully requests a waiver of the 14-day stay under Bankruptcy Rules 6004(h) and 6006(d), such that any order approving the Motion would be effective immediately upon entry (or, in the lesser alternative, if an objection to the sale is filed and overruled by the Court, reduce the stay period to the minimum amount of time needed by the objecting party to seek a stay pending appeal).

## VI.    NO PRIOR REQUEST

90.    No prior request for the relief sought herein has been duly made to this Court or any other court.

## VII.    NOTICE

91.    The Trustee has provided notice of this Motion to (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Landlord, Raymond H. Lemisch, Esq., Klehr Harrison Harvey Branzburg LLP, 919 N. Market Street, Suite 1000, Wilmington, DE 19801; (iii) counsel to the Subtenant, Robert M. Bovarnick, Esq., Bovarnick and Associates, LLC, Two Logan Square, Suite 2030, 100 N. 18th Street, Philadelphia, PA 19103; and (iv) all parties requesting notices pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Trustee submits that no other or further notice is required.

92.    Notice of this Motion has also been provided to anyone who previously expressed an interest in the assets and all known creditors including lienholders, advising them that a complete copy of the Motion with exhibits can be obtained upon written request to counsel for the Trustee.

## VIII.    CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Trustee respectfully requests that the Bankruptcy Court (a) enter an order, substantially in the form of the Proposed Order annexed hereto, approving the terms of the Settlement Agreement and the compromise and transactions contemplated thereby, including, without limitation, the Trustee Transfer, and (b) granting such other and further relief to the Trustee as may be just and proper.

ME1 19791450v.3

Dated: April 6, 2015                    **McCARTER & ENGLISH, LLP**
       Wilmington, Delaware

                                                 By: */s/ Katharine L. Mayer*
Katharine L. Mayer (DE # 3758)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
Telephone 302.984.6300
Facsimile 302.984.6399
kmayer@mccarter.com

   *- and -*

Charles A. Stanziale, Jr.
Jeffrey T. Testa
Matthew B. Heimann
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444

*Attorneys for the Chapter 7 Trustee*

26