**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>TENGION, INC.<br><br>　　　　　　　　Debtor. | Chapter 7<br><br>Case No. 14-12829 (CSS)<br><br>**Objection Deadline: December 27, 2016 @ 4:00 p.m.**<br>**Hearing Date: January 18, 2017 @ 1:15 p.m.** |

**TRUSTEE'S MOTION FOR APPROVAL OF STIPULATION WITH
MEDPACE, INC. AND ITS AFFILIATES FOR RETURN OF ESTATE
PROPERTY, WITHDRAWAL OF CLAIM, AND MUTUAL RELEASES,
PURSUANT TO FED. R. BANKR. P. 9019**

Charles A. Stanziale, Jr. (the "Trustee"), in his capacity as the chapter 7 trustee for the bankruptcy estate of Tengion, Inc. (the "Debtor"), through his undersigned counsel, moves this Court for entry of an order approving a *Stipulation with Medpace, Inc. and its Affiliates for Return of Estate Property, Withdrawal of Claim, and Mutual Releases, Pursuant to Fed. R. Bankr. P. 9019* (the "Motion"), and in support thereof, states as follows:

**JURISDICTION, VENUE, AND PREDICATE FOR RELIEF**

1. The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), and (O).

2. Venue is proper pursuant to 28 U.S.C. § 1408.

3. The predicate for the relief requested herein is Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule 9019").

**BACKGROUND**

**A.    General Bankruptcy Matters**

4. On December 29, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of title 11 of the United States Bankruptcy Code (as amended, the

"Bankruptcy Code") in the Bankruptcy Court.

5.   On or about December 30, 2014, Charles A. Stanziale, Jr. was appointed as the Trustee in the Debtor's case.

6.   On February 9, 2015, the Bankruptcy Court entered an Order authorizing the employment of McCarter & English, LLP as counsel to the Trustee.

7.   In accordance with his duties under the Bankruptcy Code, the Trustee has been investigating the financial affairs of the Debtor, examining proofs of claim and issues for the collection of estate property, and reviewing potential causes of action to avoid preferential transfers.

**B.   The Medpace Claim and Settlement**

8.   Medpace, Inc. and its affiliates (collectively, "Medpace") filed a proof of claim against the Debtor's estate, registered as claim no. 44-1 (the "Medpace Claim").

9.   The Medpace Claim is a secured claim for $193,058.61, secured by Medpace's possession of cash from the Debtor arising from a prepayment of services.

10.  Before the Petition Date, the Debtor had entered into a *Master Clinical Services Agreement* (the "MSA") with Medpace, dated May 2, 2014, whereby the Debtor engaged Medpace to provide research and clinical services for the Debtor's neo-organ, neo-tissue, and other developmental products.

11.  The MSA provides in part that the Debtor would prepay for all of the services rendered by Medpace. The Debtor and Medpace would agree on estimated "Pre-Funded Expenses" and "Pass-Through Costs," but that such expenses and costs would be "provisional" and "not necessarily exhaustive," meaning that additional expenses or pass-through costs could be owed. MSA, §§ 3.1–3.6; Appendix 4.

12. The MSA also provides for the recovery of Medpace's reasonable attorneys' fees and costs for matters arising out of the MSA.  Id. at § 11.3.

13. On December 5, 2014, the Debtor unilaterally terminated the MSA, and filed for bankruptcy protection a few weeks later.

14. In accordance with the MSA, before the Petition Date, the Debtor made prepayments to Medpace in the amount of $207,787.85.

15. The amount of Medpace's services provided to the Debtor and costs incurred was $193,058.61; accordingly, Medpace is holding the remaining sum of $14,729.24 of the prepayments.

16. The Trustee and his counsel have reviewed the Medpace Claim, the MSA, work orders, a summary of the payments made and related invoices, and a summary of legal billings paid, and concluded that the representations and calculations provided for in the Medpace Claim are accurate and that the services were provided and costs incurred.

17. Similarly, the Trustee and his counsel have reviewed the Debtor's Statement of Financial Affairs and books and records concerning payments, in the amount of $24,557.88, made by the Debtor to Medpace within the 90-day period before the Petition Date (the "Preference Claim").

18. The Trustee and his counsel made an informal demand to Medpace for payment of the Preference Claim under section 547 of the Bankruptcy Code, and have reviewed and analyzed, with satisfaction, Medpace's asserted defenses to the Preference Claim.

19. Accordingly, the Trustee and Medpace reached an agreement, memorialized in a stipulation and order (the "Stipulation") [see **Exhibit A**] for the return of estate property, withdrawal of the Medpace Claim, resolution of the Preference Claim demand, and mutual

releases, in accordance with the terms and conditions of this Stipulation.

## SUMMARY OF SETTLEMENT[1]

20.     In full and final settlement of the Medpace Claim and Preference Claim, Medpace shall return to the Debtor's estate the sum of $15,000 to the Trustee for the benefit of the Debtor's estate and its creditors upon entry of an order approving the Stipulation. Additionally, the Trustee and Medpace each grant and accept mutual releases of any and all related claims, as more fully set forth in the Stipulation.

## RELIEF REQUESTED

21.     By this Motion, the Trustee seeks entry of an order, substantially in the form of the Proposed Form of Order, approving the Stipulation.

22.     Bankruptcy Rule 9019, which governs the approval of compromises and settlements, provides as follows:

> On motion by the Trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

FED. R. BANKR. P. 9019(a).

23.     Bankruptcy Rule 9019 contains no standards for judicial approval of a settlement, but case law directs the Bankruptcy Court to determine whether the settlement is fair and equitable and in the best interests of the estate. See, e.g., Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414 (1968). The settlement need not be the best that could have been achieved, but only must fall "within the reasonable range of

---

[1] This summary is included solely for ease of reference but is in no way controlling over terms contained in the settlement agreement.

litigation possibilities." In re Penn Cent. Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979) (citation omitted).

24. The decision to approve a settlement is "within the [sound] discretion of the bankruptcy court." In re World Health Alternatives, Inc., 344 B.R. at 296. In making its decisions, the Bankruptcy Court should not substitute its judgment for that of the trustee. The Bankruptcy Court is not to decide the numerous questions of law or fact raised by the litigation, but rather should canvas the issues to determine "whether the settlement fall[s] below the lowest point in the range of reasonableness." Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 22 (1983) (internal citations and quotations omitted); see also In re World Health Alternatives, Inc., 344 B.R. at 296 ("[T]he court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the range of litigation possibilities") (internal quotation marks and citations omitted).

25. The United States Court of Appeals for the Third Circuit has identified four factors (the "Martin factors") that should be considered in determining whether a compromise should be approved: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (citing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. at 424-25); accord In re Nutraquest, Inc., 434 F.3d 639, 644 (3d Cir. 2006).

26. In passing on the reasonableness of a proposed compromise, the Bankruptcy Court "may give weight to the opinions of the Trustee, the parties and their counsel in

determining the reasonableness of the proposed settlement." In re Bell & Beckwith, 77 B.R. 606, 612 (Bankr. N.D. Ohio), aff'd, 87 B.R. 412 (N.D. Ohio 1987); accord In re Ashford Hotels Ltd., 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness . . . . If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other") (internal citations omitted).

27. Here, the Trustee respectfully submits that application of these standards and the Martin factors to the facts establishes that the Stipulation falls within the "range of reasonableness" under Bankruptcy Rule 9019 and, therefore, should be approved.

28. The first Martin factor (probability of success in litigation), is impossible to predict with certainty. The Trustee is certain, however, that the probability of success is nowhere near "100 percent." See Martin, 91 F.3d at 393 (probability of success was 100 percent because a verdict already had been obtained). Medpace has raised defenses to the Preference Claim, and by virtue of its possession of the prepayment under the MSA, it has a valid secured claim. While the Trustee is confident that it could recover unused portions of the prepayment, other issues would still be open; the Stipulation resolves them. Accordingly, the first prong of the Martin test weighs in favor of the Stipulation.

29. The second Martin factor (difficulty of collection), does not apparently apply to the consideration of approving the Stipulation, and therefore, it should weigh neither in favor nor against approval of the Stipulation.

30. The third Martin factor (the complexity, expense, inconvenience, and delay of the litigation), weighs decidedly in favor of a compromise. If litigation against Medpace were to commence, the very fact of commencing the litigation will require substantial time and expense

to the estate. The Trustee is seeking the turnover of estate property and resolution of the Preference Claim, and doing so through the Stipulation is the most economically sound approach.

31. The final <u>Martin</u> factor (the paramount interest of the creditors) also supports approval of the Stipulation. The Trustee is poised to have $15,000 paid to the Debtor's estate for the benefit of all creditors. The Trustee believes that the proposed Stipulation, rather than litigation, is clearly in the best interests of creditors. The Stipulation will alleviate any further expenses the estate would have to incur to litigate the issues.

32. Based on this analysis, the reasonableness of the Stipulation, and that settlements are favored in bankruptcy (<u>Myers v. Martin (In re Martin)</u>, 91 F.3d at 393), the Trustee respectfully requests that this Court approve the Stipulation.

## NOTICE

33. The Trustee has served notice of this Motion on the United States Trustee, Medpace, and parties who are required notice under Bankruptcy Rule 2002.

34. No prior request for the relief sought herein has been made to any court.

## CONCLUSION

**WHEREFORE**, the Trustee respectfully requests that this Court enter the attached Proposed Form of Order granting the Trustee's Motion approving the Stipulation and granting such other and further relief as the Court deems just and equitable.

Dated: December 12, 2016  
       Wilmington, Delaware

**McCARTER & ENGLISH, LLP**

By: */s/ draft*  
Kate Roggio Buck (DE # 5140)  
Renaissance Centre  
405 N. King Street, 8th Floor  
Wilmington, DE 19801  
Telephone: (302) 984-6300  
kbuck@mccarter.com

7

- *and* -

Charles A. Stanziale, Jr.
Jeffrey T. Testa
Matthew B. Heimann
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444
mheimann@mccarter.com

*Attorneys for the Chapter 7 Trustee*